IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GILBERT ELIZONDO, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:14-CV-220 |
| | § | |
| KEPPEL AMFELS, L.L.C., | § | |
|    *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Plaintiff Gilbert Elizondo's Amended Motion to Remand the above-cited action to state court [Doc. No. 8] and Defendant's Response thereto [Doc. No. 9]. In his Motion, Plaintiff argues that diversity jurisdiction under 28 U.S.C. § 1332—the basis upon which Defendant removed this action—is not present because a member of the Defendant-L.L.C. is a Texas citizen, thereby barring complete diversity. Plaintiff further asserts that Defendant, as the party invoking removal jurisdiction, has failed to adequately allege in its pleadings the citizenship of each of its members. Defendant responds that its sole member, Keppel Offshore & Marine USA Inc., is a citizen of both Delaware (its state of incorporation) and Singapore (the alleged location of its principal place of business). Thus, according to Defendant, complete diversity exists and this Court has jurisdiction. For the reasons stated below, this Court agrees, and denies Plaintiff's Motion to Remand.

    **I.    BACKGROUND**

Plaintiff brought this employment discrimination suit in state court alleging that Defendant subjected him to discriminatory animus, disparate treatment, and/or a hostile work environment because of Plaintiff's age, in violation of the Texas Commission on Human Rights

1

Act.  Defendant timely removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Section 1332 provides that diversity jurisdiction exists whenever the amount in controversy exceeds $75,000 and the case involves claims "between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

Here, the parties agree that Plaintiff is a citizen of Texas for purposes of diversity jurisdiction.  Defendant is a limited liability company with one member, Keppel Offshore & Marine USA Inc. (hereinafter the "Member-Corporation" or "Corporation").  When determining the citizenship of a limited liability company, courts look to the citizenship of its members.  Thus, the citizenship of Defendant's sole member, the Corporation, controls in this case.  A corporation, in turn, is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Both parties agree that the Member-Corporation was incorporated in Delaware.  The parties disagree, however, on whether the Member-Corporation's principal place of business is in Texas or Singapore.[1]

## II.   DISCUSSION

As stated above, Plaintiff presents two arguments for remand.  First, he argues that, as the party invoking removal jurisdiction, Defendant has failed in its burden to adequately allege its citizenship and that of its members, in accordance with 28 U.S.C. § 1332(a) and (c).  According to Elizondo, Defendant's failure to adequately allege the basis for diversity jurisdiction mandates remand or dismissal of the action.  [Doc. No. 8 at 10 (citing *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991))].  Second, Plaintiff argues that removal was improper because Defendant's sole member has its principal place of business in Texas, precluding complete

---

[1] Neither party disputes that the amount in controversy in this case meets the threshold amount under 28 U.S.C. § 1332.

diversity of citizenship. [*See id.* (citing 28 U.S.C. § 1441(b)(2) for the "Forum Defendant Rule," which he argues bars removal in a case of complete diversity where the defendant or one of its members is a citizen of the forum state)]. Defendant responds that diversity exists in this case because the Member-Corporation's principal place of business is not in Texas, but in Singapore, where the Corporation's high-level officers direct, control, and coordinate the Corporation's activities.

### A. Adequacy of Defendant's Pleadings

In order for this Court to have diversity jurisdiction, diversity must be complete; the "citizenship of all of the plaintiffs must be different from the citizenship of all of the defendants." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir. 1991) (citing *Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258–59 (5th Cir. 1988); *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 773 (5th Cir. 1986)). The burden of proving that complete diversity exists rests upon the party who seeks to invoke diversity jurisdiction, which is in this case the Defendant. *Id.* For Defendant to properly plead diversity jurisdiction, the citizenship of the parties must be "*distinctly* and *affirmatively* alleged." *Mullins v. Testamerica, Inc.*, 300 Fed. App'x 259, 260 (5th Cir. 2008) (quoting *Getty Oil Corp.*, 841 F.2d at 1259 (emphasis in original)). Put another way, the basis upon which subject matter jurisdiction depends "cannot be established argumentatively or by mere inference." *Id.* (citations omitted). The Fifth Circuit has found that pleadings omitting an unincorporated organization's members and their respective states of citizenship, for instance, are insufficient to establish the existence of diversity jurisdiction. *Id.*

Elizondo argues that Defendant did not state with particularity the citizenship of each of its members because it failed to include in its Notice of Removal the location of the

Corporation's principal place of business in Texas. Plaintiff's argument is unpersuasive. Defendant has clearly alleged citizenship. As Plaintiff himself states, the pleading requirements when a corporate party's citizenship is at issue for diversity jurisdiction are to "identify each of the members and the citizenship of each member." This is precisely what Defendant has done in its Notice of Removal, which provides as follows:

> Every defendant is now, and was at the time the case was commenced, diverse in citizenship from every plaintiff. No defendant is, or was at the time the case was commenced, a citizen of the State of Texas.
>
> * * *
>
> Keppel Amfels L.L.C., the defendant, is a limited liability company and therefore its citizenship is determined by the citizenship of its members. *See, e.g.*, *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). The sole member of Keppel Amfels L.L.C. is Keppel Offshore & Marine USA Inc., a corporation incorporated under the laws of the State of Delaware and with its principal place of business, now and when this case was commenced, at 50 Gul Road in Singapore. 28 U.S.C. § 1332(a, c); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (corporation's principal place of business is the place from which the corporation is controlled). Keppel Offshore & Marine USA Inc. is therefore a citizen of Delaware and of Singapore and of no other state. Because Keppel Amfels L.L.C. takes the citizenship of its sole member, Keppel Amfels L.L.C. is therefore also a citizen of Delaware and of Singapore and of no other state. *Harvey*, at 1080.

[Doc. No. 1 at 1-2].

Contrary to Elizondo's contentions, Defendant's Notice of Removal states with "reasonable particularity" the principal place of business of its only member, the Corporation. The Notice identifies Defendant as a LLC, provides the applicable law on determining the citizenship of a LLC, identifies the sole member of the LLC, and alleges that member's citizenship.

Plaintiff argues that Defendant has "specifically failed to properly allege the citizenship of each of its members in accordance with §1332(a) and (c)." [Doc. No. 8 at 9]. Subsection (a)

of Section 1332 merely sets out the two basic requirements for diversity jurisdiction, conferring jurisdiction on district courts when the matter in controversy exceeds $75,000 and is between diverse citizens (whether it is citizens of different states, citizens of a state versus those of a foreign state, citizens of different states with foreign citizens as additional parties, or a foreign state as plaintiff versus citizens of a state or of different states). 28 U.S.C. § 1332(a). Subsection (a) contains no specific pleading requirements. Similarly, subsection (c) of Section 1332 provides the rule for determining the citizenship of a corporation, but does not contain pleading requirements. Unlike the method for determining the citizenship of a corporation, the rule that the citizenship of a LLC is determined by the citizenship of each of its members is not statutory—it is a judicially-created rule.

In an attempt to find non-statutory support for his argument, Elizondo cites *Harvey v. Grey Wolf Drilling, Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). There, the Fifth Circuit established the rule for the first time in this circuit that the citizenship of a LLC is determined by the citizenship of all of its members. *Id.* Nowhere in that opinion did the Fifth Circuit discuss adequacy of pleadings, for removal purposes or otherwise.

Elizondo also points this Court to the Ninth Circuit's opinion in *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012). *Harris*, however, actually supports the conclusion that Defendant has adequately pleaded jurisdiction in this case. In *Harris*, the Ninth Circuit found that the most recent opinion by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010)—where the Supreme Court established a uniform test for determining a corporation's principal place of business—did not impose a heightened pleading standard or dictate a precise manner for pleading diversity jurisdiction. *Harris*, 682 F.3d at 851. Analyzing Federal Rule of Civil Procedure 8(a)'s general requirement that a pleading contain "a short and plain statement of

the grounds for the court's jurisdiction," the pleading requirements established by the Supreme Court in *Twombly* and *Iqbal*,[2] as well as the jurisdictional rule for determining the citizenship of a corporation under Section 1332(c)(1), the Ninth Circuit confirmed what has been repeatedly upheld by most federal courts: a party alleging diversity jurisdiction must include factual assertions of both the state of incorporation and the principal place of business of a corporate party. *Id.* at 850 (citing the Fifth and Ninth Circuits as well as Charles Alan Wright's Federal Practice and Procedure). Those factual assertions are entitled to a "presumption of truth under *Twombly* and *Iqbal*." *Id.* at 850-51. According to the *Harris* Court, *Hertz* does not require more.

This Court agrees with the Ninth Circuit's conclusions in *Harris*. The Supreme Court in *Hertz* did nothing to change the requirements for pleading jurisdiction—it simply established a uniform test for federal courts to apply when determining the principal place of business of a corporation. This Court finds that Defendant provided sufficient notice of the jurisdictional basis for removing the case to this Court,[3] and denies Plaintiff's requested relief on that basis.

---

[2] As noted in *Harris*, the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), that a complaint must include more than just conclusory allegations to avoid dismissal. Legal conclusions must be supported by factual allegations. Courts accept those factual allegations as true, but they must plausibly suggest that "the pleader is entitled to relief." *Harris*, 682 F.3d at 850 (quoting *Twombly*, 550 U.S. at 557).

[3] The *Harris* Court found Form 7(a) in the Appendix of Forms to the Federal Rules of Civil Procedure—which is consistent with Federal Rule of Civil Procedure 8 (pleading requirements) and Section 1332(c)(1) (citizenship of corporations)—to be a helpful proposed format for alleging diversity jurisdiction. *Harris*, 682 F.3d at 850. Form 7(a) proposes the following format for alleging diversity jurisdiction when a corporation is a party:

> The plaintiff is [a citizen of Michigan] [a corporation incorporated under the laws of Michigan with its principal place of business in Michigan]. The defendant is [a citizen of New York] [a corporation incorporated under the laws of New York with its principal place of business in New York]. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

In this case, Defendant has pleaded jurisdiction in even more factual and legal detail than that proposed in Form 7(a).

**B. Citizenship of Defendant: The Member-Corporation's Principal Place of Business**

    **a. Applicable Law**

As to Plaintiff's substantive argument, the parties agree that the only pertinent issue is the citizenship of Defendant's sole member, the Corporation.[4] As explained above, a corporation is a citizen of every state where it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). It is uncontested that the Member-Corporation is a citizen of Delaware—the state of its incorporation. Thus, the issue is whether the Member-Corporation has its principal place of business in—and is therefore also a citizen of—either Singapore (Defendant's assertion) or Texas (Plaintiff's assertion). If the latter is true, diversity jurisdiction is defeated and the case must be remanded. If the former is true, complete diversity exists and this Court has jurisdiction to hear the case.

Both parties agree that the relevant and most-recently elucidated test established by the Supreme Court for determining a corporation's principal place of business is where the corporation's "nerve center" is located. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under this test, a corporation's principal place of business is normally "where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'never center,' and not simply an office where the corporation holds its board meetings (for example attended by directors and officers who have traveled there for the occasion)." *Id.* at 93. The Supreme Court granted certiorari in *Hertz* to resolve a circuit split as to whether the test for determining a corporation's principal place of business is a "total activity" test—in which courts consider *all* corporate activities—or the "nerve center" test. Concluding the latter is the appropriate consideration, the Court used the metaphor of a "corporate brain" in

---

[4] As the parties acknowledge, and as mentioned by this Court above, courts only look to the citizenships of a limited liability company's members. The state of formation or organization of the limited liability company itself is irrelevant. Therefore, the citizenship of Defendant—the L.L.C.—is not pertinent to this Court's analysis.

7

describing the nerve center: a corporation can have only one principal place of business, which is where top officers direct the corporation's activities and not necessarily where a corporation's general business activities take place or where its plants, sales locations, or employees are located. *Id.* at 95.

In this case, the Member-Corporation (and the Defendant-L.L.C.) is one of a group of companies that are ultimately owned by Keppel Offshore & Marine Limited (hereinafter the "parent company"), which is located at 50 Gul Road in Singapore. [Doc. No. 9, Exs. 1 & 1-A]. Defendant alleges that the Member-Corporation's highest-level officers work from Singapore, where the parent company is located, and those officers who work primarily in Texas do so under the command of those in Singapore. Plaintiff acknowledges that the parent company[5] is "global" and has its principal place of business in Singapore;[6] instead, Plaintiff argues that Keppel Offshore & Marine USA Inc. (the Member-Corporation) is a separately-formed domestic corporation, operating from a principal place of business in Houston, Texas. [Doc. No. 8 at 7]. According to Elizondo, Defendant improperly relies on the location of the parent company's principal place of business as establishing that of the Member-Corporation.

Indeed, the parent company's principal place of business—while not completely irrelevant as some of its officers are also officers of the Member-Corporation—is of little consequence in determining the citizenship of the Member-Corporation. Thus, while the parent company is indisputably headquartered in Singapore, where it has its principal place of business,

---

[5] Plaintiff refers to the parent company as the "Keppel Corporation." [Doc. No. 8 at 7]. The Court assumes Plaintiff refers to the overall parent corporation, Keppel Offshore & Marine Ltd.

[6] The 2013 Report to Stakeholders offered by both parties contains a corporate organizational chart and Global Network map, showing that there are multiple subsidiaries of the parent company with offices located around the world. [Doc. No. 9, Def. Ex. 1-A; Doc. No. 8, Pl. Ex. C].

the Court must determine to what extent Singapore is also where the *Member-Corporation's* activities are directed, controlled, and coordinated.

As the party invoking federal jurisdiction, Defendant bears the burden to establish jurisdiction by a preponderance of the evidence. *See, e.g.*, *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Specifically, for the narrow issue at hand, in order for this Court to find diversity jurisdiction, Defendant must show by a preponderance of the evidence that the principal place of business of its Member-Corporation is outside of Texas.[7] As discussed below, this Court finds that Defendant has demonstrated by a preponderance of the evidence that the Corporation's principal place of business is in Singapore.

### b. The Parties' Evidence

As support for his argument that the Member-Corporation's principal place of business is located in Texas, Plaintiff offers "Texas Corporate Records and Business Registration" for the Corporation, downloaded from the Westlaw database on November 24, 2014. [Doc. No. 8, Pl.

---

[7] Elizondo properly notes that "the party alleging jurisdiction is required to demonstrate its 'allegations [of diversity jurisdiction] by a preponderance of the evidence.'" [Doc. No. 8 at 10]. He points to *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012), for this proposition. He appears, however, to suggest elsewhere that a stricter standard applies in this case. For instance, Plaintiff alleges that any doubts as to the propriety of a removal must be construed strictly in favor of remand. As the parties seem to dispute what the appropriate standard on removal is in this case, the Court finds it necessary to briefly clarify that issue.

The *Harris* Court explained that on a motion to dismiss (which was not before the court there, nor is it here), "where the circumstances show that the allegations of a party's principal place of business are implausible, the district court *may* require more specific fact pleading." *Id.* (emphasis added). The Court continued to state that if the district court has doubts about whether diversity truly exists, it "may insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify its allegations by a preponderance of the evidence." *Id.* Any suggestion by Elizondo that a stricter standard than the preponderance standard applies based on a reading of *Harris* is therefore misplaced. The other case cited by Plaintiff for his argument that a strict-construction standard applies—*Manguno*, 276 F.3d at 723—merely cited the strict-construction standard in the context of interpreting the removal statute. A careful reading of the Fifth Circuit's opinion makes it clear that the strict-construction standard applies solely to statutory construction, not to the resolution of factual issues like the one before this Court. *Id.* (laying out the strict-construction standard for statutory interpretation and then stating that jurisdiction exists when the removing party proves diversity jurisdiction by a preponderance of the evidence); *see also Balachander v. AET Inc.*, 2011 WL 4500048, No. H-10-4805 (S.D. Tex. Sept. 27, 2011) (rejecting the plaintiffs' argument that the rule that ambiguities should be resolved against jurisdiction applies to resolving issues of fact and confirming that such rule only applies to statutory construction). In sum, this Court operates under a preponderance of the evidence standard to resolve the factual dispute before it in this case, and rejects any suggestion to the contrary.

Ex. A].[8]  Under "Company Information," the records list an address for the Member-Corporation at "5177 RICHMOND AVENUE STE 1065, HOUSTON, TX 77056, USA."  [*Id.*].  "Filing Information" for the Corporation provides that (1) the Corporation filed with the Secretary of State in Austin, Texas on June 3, 2004; (2) it is incorporated in Delaware; (3) it is of a perpetual duration and currently "in existence" (at least as of the date the records were downloaded, November 24, 2014); and (4) the Corporation is a "foreign for-profit corporation."  [*Id.*].  The registered agent is listed as being Tak On Cheung, whose address is the same Houston address mentioned above.  "Principal Information" for the Corporation also shows the same Houston, Texas address for the Director (Yew Yuen Chow), Vice President of Technology (Tak On Cheung), President and CEO (Geok Seng Tan), two Directors (Ching Chuan Lai and Michael Chia), Secretary (Jeffrey Chow), and Vice President (Yuin Sing Sam).

Plaintiff additionally submits Texas Corporate Records for the Defendant-L.L.C., downloaded from the Westlaw database on the same day, November 24, 2014.  [Doc. No. 8, Pl. Ex. B].[9]  The company's information is listed as "KEPPEL_AMFELS, L.L.C., PO BOX 3107, BROWNSVILLE, TX 78523 USA."[10]  [*Id.*].  Filing information indicates that, as of the date Plaintiff downloaded the records, the company is of perpetual duration and currently in existence, having filed with the Secretary of State in Austin, Texas, on May 27, 2010.  [*Id.*].  The registered agent is Kim Foong Lee, whose address is "20,000 SOUTH HIGHWAY 48, BROWNSVILLE, TX 78521-8910, USA."  [*Id.*].  "Principal Information" names 9 Directors

---

[8] The records provide a disclaimer at the bottom, stating that the "data is for informational purposes only and is not the official record . . . . The public record items reported above may have been paid, terminated, vacated or released prior to today's date."  In light of this disclaimer, Defendant objects that these corporate records are inadmissible hearsay.  Defendant does not dispute the accuracy of the information contained in the records, however.

[9] Defendant also objects to the admissibility of the L.L.C.'s records for the same reasons stated above. *Supra* note 8.

[10] An associated entity is listed—Keppel Amfels, Inc.—which filed on May 27, 2010, and became inactive on the same day.  Its "capacity" is labeled as "converted."  [Doc. No. 8, Pl. Ex. B].

(Yew Yuen Chow, P.S. Sit, Thomas Covellone, K.S. Foo, Keith Teo, Malcolm Sharples, Geok Seng Tan, Kok Seng Wong, and Yuin Sing Sam); a Secretary (Jeffrey Chow); a Chief Operating Officer (Geok Seng Tan – who is also a Director); a Chief Financial Officer (Yuin Sing Sam – who is also a Director); a Chief Executive Officer (Cheok Yuen Ho); Vice President, Commercial (Hwan Khoon Phua); Vice President, Production (Tim McCoy); and Vice President, HR (Alberto Garcia).  Each of these principals has the following Houston, Texas address under his name: "5177 RICHMOND AVENUE, HOUSTON, TX 77459, USA."[11]

While not irrelevant to the Court's analysis, Plaintiff's submission of Texas Corporate Records for the L.L.C. and Member-Corporation is not sufficient by itself to conclusively establish that the Member-Corporation's nerve center is located in Houston, Texas.  In determining the principal place of business, corporate filings are not solely determinative.  The Supreme Court recently confirmed this in *Hertz*, where it rejected the notion that the "mere filing of a form . . . listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"  *Hertz*, 559 U.S. at 97; *Balachander*, 2011 WL 4500048, at *8-9 (rejecting the plaintiffs' reliance on the company's Texas Franchise Tax Public Information Records listing Houston as its "principal place of business" because the definition of "principal place of business" under the diversity jurisdiction statute and nerve center test is not necessarily the same as the definition provided by the Texas Tax Code).  The corporate records in this case identify a Houston address for the Member-Corporation and its registered agent and principals.  This evidence fails to show, however, that the Houston address represents anything "more than a mail drop box" for the Corporation in the United States.  *Hertz*, 559 U.S. at 97.  In other words, the records submitted by Plaintiff, while probative, do not

---

[11] This is the same street address listed for the principals of the Member-Corporation in Texas Corporate Records (as provided above), but the zip code differs and a suite number is not provided.

11

conclusively speak to where the "actual direction, control, and coordination" take place. *Id.*; *see also Balachander*, 2011 WL 4500048, at *10 ("*Hertz*'s clear emphasis is on where the corporation is actually controlled, not where buildings are located, or where the bulk of the corporation's operations are located, or where corporate filings conclusorily state the primary office is located."). As for the Texas Corporate Records regarding the L.L.C., as already noted by this Court and conceded by both parties, the citizenship of the L.L.C. itself is not relevant to the diversity determination.

Lastly, Elizondo offers four selectively-chosen pages from the parent company's 2013 Annual Report to Stakeholders ("Keppel Offshore & Marine Report to Stakeholders 2013 ("Configured for Growth")) as proof that the principal place of business of the Member-Corporation is located in Texas. [Doc. No. 8, Pl. Ex. C; Doc. No. 9, Def. Ex. 1-A]. Within that Report, Plaintiff points to what appears to be a list of various Keppel Offshore & Marine companies and/or offices located all over the world.[12]   Under the "USA" heading, Keppel Offshore & Marine USA, Inc. is listed with a Houston address—"5177 Richmond Ave, Suite 1065, Houston, TX 77056, USA." Contacts for the Corporation are also provided: Tommy Sarn, Vice President, and Cheung Tak On, Vice President (Technology).[13]

---

[12] Plaintiff provides only one page—clearly pulled from the middle of this list of offices—which contains contact information for subsidiaries of Keppel Offshore & Marine Ltd. in the United States and other countries. As a result, without the first page of the list, it is not immediately apparent what this list even is. In small font within the footer of the page, there is some indication for what the list might be—"Global Network Contacts." Other than simply identifying this exhibit (within a list of all of his exhibits) as one on which he relies in seeking a remand, Elizondo does not provide context in his briefing to help this Court identify what the document is, or its significance, apart from the fact that it lists a Houston address for the Corporation. In addition to selectively providing a page from the Report's Global Network Contacts, Plaintiff selectively offers three other pages from the remainder of the 91-page Report: (1) the cover page of the Report, entitled "Configured for Growth—Report to Stakeholders 2013;" (2) one page containing the corporation's vision and mission, as well as a brief overview of the Report's contents; and (3) the "Chairman's Statement" (with a photo of the chairman). (As detailed below, Defendant provides the Report in full.) It is not the job of the Court to guess the significance of evidence. *See also* L.R. 6I ("References to evidence in support of or in opposition to a motion must be specific, citing . . . page and paragraph number . . . .").

[13] Defendant provides the remaining pages of the same 2013 Report to Stakeholders. [Doc. No. 9, Def. Ex. 1-A]. The Report contains a Global Network map displaying the globally-dispersed yards and offices of the parent

Defendant responds that only some of the Member-Corporation's officers are Texas-based and, even then, they are not autonomous, but are instead subject to the direction and control of officers in Singapore. According to the sworn testimony of Sam Yuin Sing (hereinafter "Sam"), Vice President of the Member-Corporation, two directors of the Corporation's three-person board—Chow Yew Yuen (hereinafter "Chow") and Lai Ching Chuan (hereinafter "Lai")—reside and do the overwhelming majority of their work for the Corporation from their offices in Singapore. [Doc. No. 9, Def. Ex. 1 (Dec. of Sam Yuin Sing)]. Those two directors are also officers of the ultimate parent company (Chow is the parent company's CEO while Lai is its Executive Director for Corporate Development). The third director of the Corporation's board, Sam, resides in Texas and performs work for the Member-Corporation mostly from an office in Houston. [*Id.*]. He testifies that he also operates from offices in Brazil (where he is Vice President of Keppel FELS Brasil S.A.—another company ultimately owned by the parent company) and Singapore.

The Supreme Court in *Hertz* acknowledged the reality of the "telecommuting" era in which many large corporations will "divide their command and coordinating functions among officers who work at several different locations." That is true of the Corporation here. To determine the true nerve center when command is geographically dispersed, courts have found that even though some officers reside and work in one state where the corporation's "day-to-day"

---

company (in the United States, Brazil, The Netherlands, Bulgaria, India, United Arab Emirates, Qatar, Azerbaijan, China, The Philippines, Japan, Vietnam, Indonesia, Australia, and Singapore). The clear majority of offices are shown on the map as being located in Singapore. One of those offices (and only that office)—Keppel Offshore & Marine Ltd. (the parent company)—is labeled as "Headquarters." Additionally, to the side of the map, Singapore is the only country listed under the "Headquarters" heading. As noted by the *Hertz* Court, while, in practice, the nerve center should normally be where a corporation maintains its headquarters, courts may not simply end the analysis there: even though it is the home of the parent company and designated as headquarters, this Court must also be satisfied that Singapore is "the actual center of direction, control, and coordination [of the *Member-Corporation*], . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who had traveled there for the occasion)." *Hertz*, 559 U.S. at 93 (emphasis added). Further, as noted, the headquarters of the parent company is not necessarily the headquarters of the Member-Corporation.

operations are conducted, if a critical mass of controlling corporate officers and/or significant corporate decisions and strategy-forming are made in a different state, the principal place of business is in the latter state. *See, e.g.*, *Balachander*, 2011 WL 4500048, at *6-7 (acknowledging that, since *Hertz*, several courts have analyzed a corporation's citizenship on the basis of where its *high-level* officers direct activities); *Central W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163 (4th Cir. 2014). Thus, the fact that one of the three board members of the Corporation in this case works primarily in Houston, Texas, is not conclusive; rather, it is where the officers who retain the ultimate control and authority and/or coordinate the big-picture activities of the Corporation that is the relevant consideration.

    Here, the evidence shows that the majority of the high-level officers make big-picture decisions regarding the Corporation from Singapore. Apart from their roles on the board, Lai is also the President and CEO of the Member-Corporation, and Sam serves as its Vice President. [*Id.*; *see also* Doc. No. 9, Def. Ex. 1-B (board resolution designating the officers of the Member-Corporation, effective Jan. 2, 2014)]. Prior to Lai, Tan Geok Seng (hereinafter "Tan") was the Corporation's President and CEO, but he was removed from those positions by superiors in Singapore. [Doc. No. 9, Def. Ex. 1 (Dec. of Sam Yuin Sing)]. According to Sam, even when he was heading up the Member-Corporation, Tan was subordinate to the board of directors, the majority of whom were based out of Singapore, where they directed and controlled the activities of the Corporation. [*Id.*]. Sam, in turn, replaced Michael Chia (hereinafter "Michael") on the board of directors in 2013. [*Id.*]. Sam states that, while on the board, Michael did the overwhelming majority of his work for the Member-Corporation in Singapore (where he also served as a Managing Director for the parent company). [*Id.*].

Other officers of the Corporation include Cheung Tak On (Vice President of Technology & Foresight) (hereinafter "Cheung"), who works primarily from the Houston office, and Jeffrey Chow (Secretary) (hereinafter "Jeffrey"), who does the overwhelming majority of his work for the Member-Corporation from his Singapore office. (Jeffrey is also the General Manager, Legal for the parent company.) [*Id.*]. Thus, two officers (Sam and Chueng) operate primarily out of Houston, Texas when performing work for the Member-Corporation. Nevertheless, according to Sam, despite his and Chueng's location in Houston, they are both "subordinate to, are directed in [their] work by, and report to" Lai and Chow when they do work for the Member-Corporation, both of whom are in Singapore. Sam testifies that, as to financial matters, he is further subordinate to, directed by, and reports to Wong Ngian Jih—the Singapore-based CFO of the parent company (who is in turn subordinate to and directed by Chow).

Crucially, Sam states that the authority of Cheung and him to act on behalf of the Corporation is limited. For instance, they have purchasing and contracting authority of up to $25,000, and purchases or contracts for a greater amount must be approved by the President (Lai) or by the board of directors—the majority of whom are in Singapore. [*Id.*]. The President or the board must also approve managerial-level hiring decisions for the Member-Corporation. *See Balachander*, 2011 WL 4500048, at *7 (finding that, even though Houston officers had some authority to enter into contracts that bind the company and to hire and fire employees below the level of senior vice president, the principal place of business was in Kuala Lumpur, where high-level officers set the corporation's policies and direction). Further, according to Sam's sworn testimony, decisions by him and the other Vice Presidents of the Corporation are subject to "review, reversal, and modification" by Lai, Chow, or both. [Doc. No. 9, Def. Ex. 1]. The Vice Presidents of the Corporation regularly look to Lai and Chow for instructions and for approval of

15

their decisions, and they periodically gather with Lai and Chow at the Singapore office to discuss the Corporation's strategy and direction—both of which are set by Lai and Chow in Singapore. [*Id.*]. *See Balachander*, 2011 WL 4500048, at *7 ("The fact that high-ranking members of the Houston office regularly turn to Weng Yew for approval and must do so for high-level hiring decisions and significant contracts points to a single location in Kuala Lumpur as the 'corporate brain' of AET."). Lastly, Sam states in his affidavit that all in-person board meetings have occurred in Singapore.

Based on the above, the Court finds by a preponderance of the evidence that the Member-Corporation's principal place of business is in Singapore. As previously noted, a corporation can have only one principal place of business for purposes of determining diversity jurisdiction. *See Hertz*, 559 U.S. at 95. This case presents a factual scenario in which the nerve center test does not "automatically generate a result," as predicted by the *Hertz* Court. Indeed, a "bulk of [the Corporation's] business activities visible to the [American] public" may be said to take place in Texas; however, the evidence makes clear that its top officers ultimately direct those activities from Singapore, and those who lead from Texas are ultimately controlled by officers in Singapore. *See id.* at 96 (explaining that where the "bulk of business activities visible to the public take place" is not the pertinent consideration; rather, it is where top officers direct those activities); *see also Balachander*, 2011 WL 4500048, at *8 ("Whether AET 'operates primarily from Houston' is not relevant to the question at issue: where do the company's high-ranking decisionmakers work, set corporate policy, and direct the corporation's business activities.").[14]

---

[14] The *Hertz* Court provided the following example that is instructive for this case:

> We also recognize that the use of a "nerve center" test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332, *see supra*, at 1188. For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York. One could argue that members of the public in New Jersey would be less

Here, Plaintiff is correct that Defendant cannot rely on the parent company's principal place of business to prove that diversity of citizenship exists. This Court's analysis, however, has been confined to the Member-Corporation's officers and the location from where they direct, control, and coordinate the Corporation's activities. Elizondo points to no law, nor is this Court aware of any, that disallows a subsidiary and its parent to claim the same location where each has its principal place of business. While the evidence shows that some leadership activities occur from the Texas offices, the nerve center test mandates a "single direction, towards the center of overall direction, control, and coordination." *Hertz*, 559 U.S. at 96. In this case, the Corporation's *overall* direction, control, and coordination come from Singapore. It is thus a citizen of Singapore, not Texas. Because the Defendant-L.L.C. assumes the citizenship of its Member-Corporation, Defendant is a citizen of both Delaware and Singapore. As Plaintiff is a citizen of Texas, complete diversity exists in this case, and this Court has jurisdiction under 28 U.S.C. § 1332.

### III. Conclusion

The record in this case amply demonstrates that the location where the Member-Corporation's officers direct, control, and coordinate the Corporation's activities is in Singapore and, therefore, the Court finds that Defendant has carried its burden of establishing federal

---

likely to be prejudiced against the corporation than persons in New York—yet the corporation will still be entitled to remove a New Jersey state case to federal court. And note too that the same corporation would be unable to remove a New York state case to federal court, despite the New York public's presumed prejudice against the corporation.

We understand that such seeming anomalies will arise. However, in view of the necessity of having a clearer rule, we must accept them. Accepting occasionally counterintuitive results is the price the legal system must pay to avoid overly complex jurisdictional administration while producing the benefits that accompany a more uniform legal system.

*Hertz*, 559 U.S. at 96.

subject matter jurisdiction under 28 U.S.C. § 1332.  Plaintiff's Motion to Remand these proceedings is hereby denied.

Signed this 1st day of May, 2015.

_____
Andrew S. Hanen
United States District Judge